UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

―――――――――――

№ 20-CV-2341 (RPK) (RER)

―――――――――――

AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY,

Plaintiff,

VERSUS

CONCORD RESTORATION INC.,

Defendant.

―――――――――――

**REPORT & RECOMMENDATION**

July 28, 2021

―――――――――――

TO THE HONORABLE RACHEL P. KOVNER,
UNITED STATES DISTRICT JUDGE

**RAMON E. REYES, JR., U.S.M.J.:**

American Empire Surplus Lines Insurance Company ("Plaintiff") commenced this action against defendant Concord Restoration Inc. ("Concord" or "Defendant") pursuant to 28 U.S.C. §§ 1332, 2201, and 2202. (Dkt. No. 9 ("Am. Compl.") ¶ 3). Presently before the Court is Plaintiff's motion for default judgment against Concord. (Dkt. No. 12 ("Pl.'s Mot.")). Concord has filed a late answer and seeks to litigate this case on the merits. (Dkt. No. 15 ("Answer"); Dkt. No. 16 ("Fusco Aff."))._[1]_ For the reasons stated below, I respectfully recommend that Your Honor deny Plaintiff's motion and permit Concord leave to file its late answer.

―――――――――――

[1] Dominick Fusco ("Fusco") is the President and sole shareholder of Concord. (Fusco Decl. ¶ 1).

1

## BACKGROUND

A. Facts

Plaintiff issued a Commercial General Liability insurance policy to Concord for the period of June 6, 2018 to June 6, 2019 (the "Policy"). (Am. Compl. ¶ 6; *see also* Fusco Aff. ¶ 2). Under the Policy, Concord's insurance premium was to be calculated as a percentage of its gross receipts during that period. (Dkt. No. 12-10 ("Policy") at 8, 44; Am. Compl. ¶ 7; Fusco Aff. ¶ 2). Plaintiff charged Concord an advanced premium based on an estimate of Concord's anticipated gross receipts. (Policy at 8, 20, 44; Am. Compl. ¶ 8; *see* Fusco Aff. ¶ 3). Under the Policy, Plaintiff reserved the right to conduct an audit and adjust the total premium amount due based on Concord's actual gross receipts. (Policy at 3, 20, 44; Am. Compl. ¶¶ 8–11).

In January 2020, Plaintiff audited Concord's financial records (the "Audit"). (Am. Compl. ¶ 12; Dkt. No. 17 ("O'Connor Aff.") ¶ 3(a)).[2] According to Plaintiff, the Audit revealed that Concord owed an additional premium amount of $168,152. (Am. Compl. ¶ 13). On January 29, 2020 Plaintiff sent the Audit results to Concord.[3] (Dkt. No. 17-2 at 3; Dkt. No. 17-4). "Concord's representative," Alex Polansky, responded on February 4, 2020 and stated that Concord agreed with the findings. (O'Connor Aff. ¶ 3(b); Dkt. No. 17-2 at 2). Concord alleges in its sur reply that Coverage by Design, mishandled the Audit and did not have "authorization or authority" from Concord to respond to Plaintiff's email about the findings.[4] (Dkt. No. 18 ¶¶ 3–4).

---

[2] Maureen E. O'Connor ("O'Connor") is of counsel to the law firm Abbate, Balkan, Colavita & Contini, L.L.P., Plaintiff's counsel or record. (O'Connor Aff. ¶ 1).

[3] The Audit findings were sent to Alex and Bernie Polansky of Coverage by Design, as well as Nadira Mangal of Concord. (Dkt. No. 17-2 at 3). Concord identifies Bernie Polansky as its insurance broker. (Fusco Decl. ¶ 4).

[4] Alex Polansky did not copy Nadira Mangal on his email response to Plaintiff in which he stated that Concord agreed with the Audit. (Dkt. No. 17-2 at 2). Concord now believes that Coverage by Design intentionally obscured its initial

2

Plaintiff then sent Fusco a demand letter for the Audit amount on February 13, 2020. (Am. Compl. ¶ 14; O'Connor Aff. ¶ 3(d); Dkt. No. 17-3). Concord responded on February 27, 2020 disputing the results of the Audit and requesting additional time to prepare supporting documentation. (Dkt. Nos. 17-4, 17-5). Plaintiff permitted several extensions through May 2020. (O'Connor Aff. ¶ 3(e)–(i); Dkt. Nos. 17-5, 17-6). During that time, Fusco acted on the advice of its insurance broker. (Fusco Dec. ¶¶ 4–5). He "was attempting to resolve this matter out of court and was actively negotiating with the Plaintiff and their counsel." (Dkt. No. 16-2 ("Ripa Aff.") ¶ 4).[5] Concord explains that during this time it could not access its records because its office was closed due to the COVID-19 pandemic. (Fusco Decl. ¶ 4; Ripa Decl. ¶ 4; *see* O'Connor Aff. ¶ 3(g)). Concord regained access to its office by June 1, 2020. (Dkt. No. 17-9).

Plaintiff filed the Complaint on May 26, 2020 after Concord's continued failure to provide documentation that would support its dispute of the Audit. (Dkt. No. 1; O'Connor Aff. ¶ 3(i)). Plaintiff requested that Concord waive service of summons in light of safety concerns with the COVID-19 pandemic. (Dkt. No. 17-8). Concord did not waive service and was served with the Summons and Complaint on July 7, 2020. (Dkt. No. 7; O'Connor Aff. ¶ 3(k)). Thus, Concord's answer was due by July 28, 2020. (*See* Dkt. No. 7).

Concord did not file an answer or otherwise appear before the Court; therefore, on August 4, 2020, I ordered that "[n]o later than August 21, 2020 one of the following events must occur: (a) the parties must file a stipulation extending the defendants time to answer, (b) the plaintiff must

---

communications with Plaintiff. (Dkt. No. 18 at 5). Further, Concord suggests that its first response to Plaintiff regarding the Audit was not Alex Polansky's email reply on February 4, 2020, but a letter dated February 27, 2020, (Dkt. No. 18 ¶ 5; Dkt. No. 17-4); however, Concord does not explain whether Nadira Mangal or another Concord employee ever responded to Plaintiff's initial email containing the Audit results.

[5] Glenn H. Ripa Esq. ("Ripa") is Concord's attorney of record. (Ripa Aff. ¶ 1).

3

file a motion for the entry of a notation of default or (c) the defendants must file an answer." (Order dated 8/4/2020). Plaintiff served that order on Concord via email.[6] (O'Connor Aff. ¶ 3(n); Dkt. No. 16-1 at 2). Plaintiff then requested a certificate of default on August 6, 2020. (Dkt. No. 8). While the request was pending, Plaintiff filed its Amended Complaint.[7] (Am. Compl.). The Clerk of the Court then entered Concord's default on the Complaint.[8] (Dkt. No. 11). Thus, I directed the Clerk of the Court to enter Concord's default on the Amended Complaint should Concord fail to

---

[6] Apparently in an attempt to comply with my Order, (Fusco Decl. ¶ 5), Concord sent a letter to Plaintiff on August 20, 2020 detailing the transactions that it believes were erroneously included in the audit; however, it did not include supporting documentation. (Dkt. No. 16-1 at 4; O'Connor Aff. ¶ 3(q); Dkt. No. 17-13). Concord indicated that a total amount of $465,733 was improperly incorporated into the audit and requested that the amount due be adjusted. (Dkt. No. 16-1 at 4; O'Connor Aff. ¶ 3(q)). The letter also stated that "[t]he company does not have adequate cash from resulting of [sic] numerous cash infusions." (Dkt. No. 16-1 at 4). Plaintiff responded by informing Concord that it would seek default judgment. (O'Connor Aff. ¶ 3(r); Dkt. No. 17-13 at 2).

[7] The Amended Complaint became the operative pleading on filing. *See Allstate Ins. Co. v. Yadgarov*, No. 11 Civ. 6187 (PKC) (VMS), 2014 U.S. Dist. LEXIS 30068, at *25–26 (E.D.N.Y. Feb. 10, 2014), *adopted by* 2014 U.S. Dist. LEXIS 30067 (Mar. 5, 2014); *Lemus v. Manhattan Car Wash, Inc.*, No. 06 Civ 15486 (MHD), 2010 U.S. Dist. LEXIS 129197, at *21 (S.D.N.Y. Nov. 24, 2010) ("In light of the line of caselaw permitting district courts to treat a motion for default judgment as encompassing a request for an order directing the Clerk of the Court to enter a default, . . . entry of default made while a motion for default judgment is pending is a technical oversight and not a fatal flaw.").

Rule 5 of the Federal Rules of Civil Procedure provides that an amended complaint need not be served on a party who is in default for failing to appear," unless the amended complaint contains new claims against that party. FED. R. CIV. P. 5(a); *Yadgarov*, 2014 U.S. Dist. LEXIS 30068, at *14–15. "For the purposes of [Rule 5(a)], a party has failed to appear if it does not appear within the time proscribed for answering or otherwise responding to the complaint; no entry of default by the clerk is required." *Gunderson Amazing Fireworks, LLC v. Merrick Bank*, No. CV 12-3869 (JS) (AKT), 2016 U.S. Dist. LEXIS 21406, at *19 (E.D.N.Y. Feb. 19, 2016) (quoting *Yadgarov*, 2014 U.S. Dist. LEXIS 30068, at *14 (collecting cases)); *see also John the Greek Co. v. Eaternity, LLC*, No. 16-CV-919 (JS) (AYS), 2019 U.S. Dist. LEXIS 10205, at *7 (E.D.N.Y. Jan. 18, 2019).

The Amended Complaint does not contain new claims against Concord. Plaintiff merely corrected the policy number at issue and quoted the relevant portions of that policy. (Dkt. No. 12-1, ¶ 6 n.1. *Compare* Dkt. No. 1, *with* Am. Compl.). Although there was no certificate of default on the docket, Concord was clearly in default. *See Xerox Corp. v. ZenPrint, LLC*, 386 F. Supp. 3d 248, 249–50 (W.D.N.Y. 2019) (collecting cases) (finding defendant corporation defaulted because it did not have an attorney and did not respond to motion for summary judgment). Therefore, even though Plaintiff filed the Amended Complaint before the Clerk of the Court entered Concord's default for failure to appear, (*see* Dkt. Nos. 9, 11), Plaintiff was under no obligation to serve Concord with the Amended Complaint. *See Yadgarov*, 2014 U.S. Dist. LEXIS 30068, at *14–15. Plaintiff did also send a curtesy copy of the Amended Complaint to Concord via the United States Postal Service ("USPS"). (Dkt. No. 10).

[8] The Clerk of the Court entered default against Concord on August 17, 2020 for its failure to answer the Complaint. (Dkt. No. 11). The filing of the Amended Complaint on August 9, 2020 nullified that entry of default. *See, e.g.*, *Yadgarov*, 2014 U.S. Dist. LEXIS 30068 at *12, *20–21 nn.11–12 (collecting cases) ("[S]everal courts have found that once the original complaint is superseded, a clerk's entry of default on that pleading is mooted").

4

answer by September 2, 2020. (Order dated 8/31/2020). I also directed Plaintiff to file its motion for default judgment thereafter by September 16, 2020. (*Id.*).

Concord still did not answer[9] or otherwise appear to defend this action, and Plaintiff filed its motion for default judgment on September 8, 2020.[10] (*See* Pl.'s Mot.). Three weeks later, on September 22–23, 2020, Concord appeared through counsel and filed a proposed answer. (Dkt. Nos. 14–15). The Honorable Roslynn R. Mauskopf referred the matter to me for a report and recommendation. (Order dated 9/9/2020).

## DISCUSSION

**I.    Legal Standard**

   A. <u>Default Judgment</u>

The Federal Rules of Civil Procedure establish a two-step process for entry of a default judgment. *See* FED. R. CIV. P. 55. The first step is for the clerk of the court to enter a non-appearing defendant's default. FED. R. CIV. P. 55(a); *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504–05 (2d Cir. 2011). However, in certain circumstances a default may be entered by the court. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) ("Although Rule 55(a)

---

[9] Concord mentions that it was not aware of the Court's order to answer the Amended Complaint by September 2, 2020. (Ripa Decl. ¶ 4). That is no matter. First, Concord had already missed two deadlines to answer the Complaint—July 28 and August 21, 2020. (*See* Dkt. Nos. 6–7; Order dated 8/4/2020). Concord knew of those deadlines. (Dkt. No. 7; Dkt. No. 16-1 at 2). Second, Plaintiff mailed the Amended Complaint to Concord via USPS on August 12, 2020. (Dkt. No. 10). The September 2, 2020 due date was twenty-one days from August 12, 2020 in accordance with Rule 5, to which Concord refers. (*See* Ripa Decl. ¶ 5). Moreover, pursuant to Rule 15, a defendant has only fourteen days to respond to an Amended Complaint. FED. R. CIV. P. 15(a)(3); *Lemus*, 2010 U.S. Dist. LEXIS 129197, at *23.

[10] The Clerk of the Court has not entered Concord's default on the Amended Complaint. However, Concord had been in default for some time before the motion for default judgment was filed, *see supra*, n.7; and the Court may "treat a motion for default judgment as encompassing a request for an order directing the Clerk of the Court to enter a default," *Lemus*, 2010 U.S. Dist. LEXIS 129197, at *21; *but cf. Pension Ben. Guar. Corp. v. Canadian Imperial Bank of Com.*, No. 87 Civ. 1046 (MBM), 1989 U.S. Dist. LEXIS 4982, at *5 (S.D.N.Y. May 8, 1989) (denying motion for default judgment because the clerk of the court had not certified defendant's default).

contemplates that entry of default is a ministerial step to be performed by the clerk of court, . . . a district judge also possesses the inherent power to enter a default." (citations omitted)); *La Barbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 347 (E.D.N.Y. 2009) (adopting R. & R.) ("[C]ourts will generally excuse a failure to obtain entry of default before the motion for default judgment is made"). The second step requires a plaintiff to "apply to the court for entry of a default judgment." FED. R. CIV. P. 55(b)(2); *see also Priestly*, 647 F.3d at 505. If the defendant does not appear or move to set aside entry of default in accordance with Rule 55(c), a default judgment may then be entered. *La Barbera*, 666 F. Supp. 2d at 347 (E.D.N.Y. 2009).

When a default is entered, the defendant is presumed to admit all well-pleaded allegations in the complaint relating to liability. *La Barbera*, 666 F. Supp. 2d at 348 (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). Nevertheless, a plaintiff must demonstrate that these well-pleaded facts establish a defendant's liability. *Id.* Thereafter, a plaintiff may be required to prove damages at an evidentiary hearing, at which the defendant is able to contest damages. *See id.* at 349 (citing *Greyhound Exhibitgroup*, 973 F.2d at 158). If damages can be mathematically calculated or if there are detailed affidavits and documentary evidence as to what damages should be, then an evidentiary hearing may not be required. *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

  B. <u>Leave to File Late Answer</u>

A party in default may move to file a late answer upon a showing of "good cause" pursuant to Rule 55(c). *Packard v. City of New York*, No. 15 Civ. 07130 (ATS) (DA), 2018 WL 2229123, at *1 (S.D.N.Y. Apr. 30, 2018); *U.S. CFTC v. McCrudden*, No. 10-CV-5567 (DRH) (AKT), 2015 U.S. Dist. LEXIS 139257, at *86 (E.D.N.Y. Oct. 13, 2015) (quoting *Pension Ben. Guar.*, 1989

6

U.S. Dist. LEXIS 4982, 1998 WL 50171, at *2) ("The party seeking to answer is given the same opportunity to present mitigating circumstances that it would have had if a default had been entered and it had then moved under Rule 55(c) to set is aside."), *adopted* (Order dated 11/13/2015). "[T]he standard . . . pursuant to Rule 55(c) is less rigorous than the . . . standard for setting aside a default judgment . . . pursuant to Rule 60(b).").[11] *Meehan, v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981).

Rule 55(c) does not define "good cause;" however, courts generally apply the following criteria: (1) whether the default was willful; (2) whether the defendant demonstrates the existence of a meritorious defense; and (3) whether, and to what extent vacating entry of default will prejudice the non-defaulting party. *Peterson v. Syracuse Police Dep't*, 467 F. App'x 31, 33 (2d Cir. 2012) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)). These factors should be balanced and not applied in isolation. *Info. Sys. and Networks Corp. v. United States*, 994 F.2d 792, 796 (Fed. Cir. 1993) (citing, *inter alia*, *Meehan*, 652 F.2d at 277) ("The majority of circuits balance the three factors . . . . The Ninth Circuit is alone in its treatment of the three factors as disjunctive."). Additionally, courts may weigh "[o]ther relevant equitable factors," such as "whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result," *Enron Oil,* 10 F.3d at 96 (citating *Sony v. Elm State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir. 1986)). "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party," and the factors should be generously construed. *Enron Oil*, 10 F.3d at 96; *see also State St. Bank & Trust Co. v. Inversiones Errazuriz Ltd.*, 374 F.3d 158, 168 (2d Cir. 2004).

---

[11] The more rigorous excusable neglect standard pursuant to Rule 6(b)(1)(B) and Rule 60(b) is appropriate when default judgment or another final order has been entered against the defendant. *See Packard v. City of New York*, No. 15 Civ. 07130 (ATS) (DA), 2018 WL 2229123, at *1 (S.D.N.Y. Apr. 30, 2018).

## II. Concord Should be Permitted to File a Late Answer

On balance, the good cause criteria weigh in favor of permitting Concord to file its answer.

### A. Concord's Default Was Not Willful

In the context of a default, willfulness "refer[s] to conduct that is more than merely negligent or careless,' but is instead 'egregious and not satisfactorily explained.'" *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (quoting *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)). Default is willful where a defendant demonstrates "a clear pattern of willful and deliberate disregard for the litigation." *Id.* at 187. Gross negligence may weigh against the defaulting defendant, but it does not amount to willfulness. *See American Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996); *Nikolaeva v. Home Attendant Servs. of Hyde Park,* No. 15-CV-6977 (NGG) (RER), 2018 WL 6984837, at *2 (E.D.N.Y. Nov. 16, 2018), *adopted by* 2019 WL 147721 (Jan. 9, 2019).

A corporation cannot proceed without counsel. *Khurana v. JMP USA, Inc.*, No. 14-CV-4448 (SIL), 2017 WL 1251102, at *2 (E.D.N.Y. Apr. 5, 2017) (quoting *Grace v. Bank Leumi Trust Co.*, 443 F.3d 180, 192 (2d Cir. 2006)) ("It is settled law that a corporation may not appear in a lawsuit against it except through an attorney."). Thus, a corporation that chooses not to retain counsel after receiving warnings from the court defaults willfully. *Topnotch Tennis Tours, LLC v. Glob. Tennis Connections Ltd.*, 2016 U.S. Dist. LEXIS 44946, at *12–13 (E.D.N.Y. Mar. 30, 2016) (collecting cases) ("[A] corporation's failure to appear by counsel is a deliberate failure to defend and is sufficient to find willfulness."), *adopted by* 2016 U.S. Dist. LEXIS 69756 (May 25, 2016); *Chiquita Fresh N. Am., LLC v. Long Island Banana Corp.*, No. 14-982 (ADS) (AKT), 2018 WL 1786991, at *5 (E.D.N.Y. Feb. 28, 2018) ("A corporation's failure to retain counsel constitutes a

failure to "otherwise defend" the action as provided by Rule 55(a)"), *adopted by* 293 F. Supp. 3d 305 (E.D.N.Y. 2018). However, "without a disregarded court order, the failure to retain counsel cannot be labeled as willful." *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS) (AKT), 2010 WL 3780972, at *3 (E.D.N.Y. Aug. 23, 2010), *adopted by* 2010 WL 3780984 (E.D.N.Y. Sept. 17, 2010).

Timeliness further informs the Court's understanding of whether the default was willful. *See, e.g.*, *Int'l Reformed Univ. & Seminary v. Newsnjoy USA*, No. 13-CV-3156 (JS) (GRB), 2014 U.S. Dist. LEXIS 32043, at *6–7 (E.D.N.Y.) (finding default not willful because, within three weeks of entry of default, defendants retained counsel and filed motion to vacate), *adopted by* 2014 U.S. Dist. LEXIS 31696 (Mar. 10, 2014); *Tellock v. Davis*, No. 02-CV-4311 (FB), 2003 U.S. Dist. LEXIS 22892, at *5–6 (E.D.N.Y. Dec. 17, 2003) (declining to infer that failure to appear for three months was willful, strategic decision because defendant was attempting to find counsel).

Concord does not contest that it was served with the Summons and Complaint, was aware of the suit, and did not seek legal counsel for more than two months.[12] Instead, Fusco claims that because he is not a lawyer "[he] did not understand the nature of the documents that needed to be filed" and that he "truly thought [he] was doing the right thing" to resolve the matter. (Fusco Decl. ¶ 5). Fusco followed the advice of his insurance broker to communicate with Plaintiff's counsel outside of court. (*Id.* ¶¶ 4–5). Fusco concedes that his "responses on the advice of [his] insurance broker were not legally sufficient and [Concord] was legally in default." (*Id.* ¶ 7). He candidly admits that he made an "uninformed negligent mistake." (*Id.*).

---

[12] Concord's now-retained counsel attests that the ongoing COVID-19 pandemic "may have caused problems" in responding to the Complaint. (Ripa Decl. ¶ 4). From the parties' email exchange, it appears that Concord was unable to access the relevant documents to dispute the Audit until on or about June 1, 2020. (Dkt. No. 17-9). However, neither Concord nor its counsel explains how the pandemic prevented it from communicating with the Court in any way.

9

Concord was served on July 7, 2020, (Dkt. No. 7); it delayed less than three months to file an answer, (Dkt. No. 15). During that period, the Court reiterated and extended the deadlines by which Concord was required to file its answer. (Dkt. No. 6 ("Within 21 days after service of this summons on you, . . . you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure."); Order dated 8/4/2020 (extending deadline to August 21, 2020); Order dated 8/31/2020 (directing the Clerk of the Court to enter Concord's default "should Defendant fail to answer [the] Amended Complaint by 9/2/2020"). The Court did not issue any orders directing Concord to retain legal counsel.

Despite the court-ordered deadlines, Concord did not attempt to communicate with the Court in any way until Plaintiff filed the motion for default judgment. Only then did Fusco "finally realize[]" that Concord would need an attorney to help resolve the matter. (Ripa Decl. ¶ 2). Concord retained counsel on September 22, 2020—just two weeks after the motion for default judgment was filed. (Dkt. No. 14). The next day, Concord filed its proposed answer. (Dkt. No. 15).

Plaintiff does not argue that Concord's default was willful and offers no evidence that Concord strategically refused to answer the complaint or intentionally defaulted. (*See* O'Connor Aff.). While Concord's decision not to seek legal counsel for nearly three months, "may have been careless, or even negligent, it was clearly not willful." *Courchevel 1850 LLC v. Espinosa*, No. 17 Civ. 799 (VB), 2018 WL 3462519, at *4 (S.D.N.Y. July 17, 2018). Because default judgments are disfavored and counsel appeared to actively defend against Concord's liability before judgment was entered against Concord, this factor weighs in favor denying the motion for default judgment.

10

B. <u>Concord Has Put Forth a Meritorious Defense</u>

"Whether a defense is meritorious 'is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense.'" *State St. Bank*, 374 F.3d at 167 (quoting *Enron Oil*, 10 F.3d at 98). "[A] defendant must present more than conclusory denials when attempting to show the existence of a meritorious defense." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001). This standard is not demanding, and defendants are not required to show a likelihood of success on their defense; however, they must "articulate a defense with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a 'serious question' as to the validity of those allegations." *Sea Hope Navigation Inc. v. Novel Commodities SA*, 978 F. Supp. 2d 333, 339 (S.D.N.Y. 2013) (citation omitted). In other words, an examination of the merits of the defense is not appropriate at the default judgment stage. *State St. Bank*, 374 F.3d at 167–68; *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). However, the defaulting party must make a showing that "warrant[s] further briefing and consideration." *Bldg. Serv. 32B-J Health Fund v. Impact Real Estate Mgmt.*, 00 Civ. 1343 (RWS), 2000 U.S. Dist. LEXIS 15065, at *4 (S.D.N.Y. Oct. 16, 2000); *see also Am. All. Ins.*, 92 F.3d at 61 (citation omitted) ("A defense is meritorious if it is good at law so as to give the factfinder some determination to make.").

Concord contends that it has evidence that the Audit incorporated transactions that were not includable gross receipt items. (Fusco Decl. ¶ 6; Dkt. No. 17-12). Specifically, Concord explains that approximately $300,000 represented in Plaintiff's calculations should have been excluded.[13] (Fusco Decl. ¶ 6). Concord submitted a letter listing transactions that it contends were improperly

---

[13] In its initial dispute of the Audit, Concord claimed that transactions totaling $465,733 were improperly incorporated into the audit. (Dkt. No. 16-1 at 4).

11

included in the audit. (Dkt. No. 17-12). Those transactions include "loans to the Defendant by its principal [and] repayments of loans by officers of the company." (Answer ¶ 4; *see also* Dkt. No. 17-12). That the premium was fully paid, supported by records showing transactions allegedly erroneously incorporated into the audit report, constitutes a meritorious defense. *See, e.g.*, *MD Produce Corp. v. 231 Food Corp.*, 304 F.R.D. 107, 110 (E.D.N.Y. 2014) (Perishable Agricultural Commodities Act) ("[I]n the context of a motion to vacate a default, a defense that the parties were properly paid constitutes a 'meritorious defense.'" (citation omitted)); *Franco*, 2010 WL 3780972, at *3 (Fair Labor Standards Act) ("Defendant has put forth on its face a meritorious defense, though such defense is yet untested."), *adopted by* 2010 WL 3780984 (Sept. 17, 2010).

Plaintiff contends that Defendant has no meritorious defense because it has not yet produced supporting documentation for the disputed transactions. (*See* O'Connor Aff. ¶ 21). This argument is unpersuasive at this stage. In response to Concord's dispute of the Audit, Plaintiff wrote only that all amounts were "properly included in the auditor's findings." (Dkt. No. 17-13 at 2). Plaintiff has not provided the audit documents or identified the "rules" governing the audit. (*See* Dkt. 17-2 at 3; Policy at 20). Thus, even if the Court were inclined to evaluate the merits of Concord's defense at this stage, it could not.

Concord's defense would offer a complete defense if proven and raises serious questions as to the validity of Plaintiff's allegations. Because Concord's defense warrants further consideration, this factor also weighs in favor of denying Plaintiff's motion for default judgment.

### C. There Would Be No Prejudice to Plaintiff

A party is prejudiced when its "ability to proceed [with its] case is impaired." *Walden v. Lorcom Techs., Inc.*, No. 05-CV-3600 (ARR) (RER), 2007 U.S. Dist. LEXIS 101365, at *10

12

(E.D.N.Y. Jan. 31, 2007), *adopted by* 2007 U.S. Dist. LEXIS 101364 (Feb. 23, 2007); *see also Glob. Gold Mining, LLC v. Ayvazian*, 983 F. Supp. 2d 378, 387 (S.D.N.Y. 2013) (quoting *Murray Eng'g, P.C. v. Windermere Props. LLC*, 12 Civ. 52 (JPO), 2013 WL 1809637 at *5 (S.D.N.Y. Apr. 30, 2013)) ("[T]he 'requisite level of prejudice,' however, requires a showing of prejudice that 'cannot be rectified in the Court in another manner were the default to be vacated.'"), *aff'd in part, modified in part*, 612 F. App'x 11 (2d Cir. 2015). Plaintiffs must show that delay would prevent recovery or would "result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Glob. Gold*, 983 F. Supp. 2d at 388 (quoting *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)). Litigation expenses are not sufficient for a finding of prejudice, *Walden*, 2007 WL 608151, at *10, and neither is delay alone, *U.S. v. Chesir*, 862 F. Supp. 2d 286, 292 (E.D.N.Y. 2012) (citing *New York v. Green*, 420 F.3d 9, 110 (2d Cir. 2005)).

Plaintiff does not put forth any reason that it would be prejudiced if Concord were permitted to file its late answer and the Court finds none. (*See* O'Connor Aff.). Thus, this factor weighs in Concord's favor.

*   *   *

For the foregoing reasons, I find that Concord has established good cause to file a late answer. I respectfully recommend that Your Honor grant Concord leave to do so.

### III. Plaintiff's Motion for Default Judgment Should Be Denied

Given the recommendation that Concord should be permitted to file its late answer, it follows that Plaintiff's motion for default judgment should be denied. *E.g., Wells Fargo Bank, N.A. v. Watts*, No. 16-CV-6919 (ENV) (RER), 2019 WL 3716190, at *1 (E.D.N.Y. Jan. 3, 2019)

(recommending motion for default judgment be denied as moot where entry of default had been vacated), *adopted by* 2019 WL 3714582 (Mar. 12, 2019). If, however, Your Honor disagrees with the recommendation, I would recommend that Plaintiff's motion be granted, but only with respect to liability. Thereafter, the matter should be referred to me for an inquest on damages.

I have carefully reviewed the parties' submissions and find that Plaintiff established Concord's liability under the Policy. Under New York law,[14] a party alleging a breach of contact must prove: "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *First Invests. Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998) (quoting *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994)).

Based on a review of the allegations in the Complaint and supporting documentation, Plaintiff has established that a contract existed between itself and Concord. Plaintiff provided copies of the Policy issued to Concord. (Dkt. No. 12-10). Concord admits that Plaintiff issued the Policy to it, under which Concord agreed to pay a premium calculated as a percentage of its gross receipts. (Answer ¶ 1; Am. Compl. ¶¶ 6–7).

Pursuant to the Policy, Plaintiff reserved the right to "examine and audit [Concord's] books and records as they relate to this policy at any time," and adjust the total premium amount due based on Concord's actual gross receipts. (Am. Compl. ¶¶ 8–11; Policy at 3, 20, 44). In addition, Plaintiff alleged that Concord materially breached the contract by failing to pay the difference between the estimated premium and actual premium as identified by the Audit, and that Plaintiff has suffered actual damages. (Am. Compl. ¶¶ 15–18). Concord admits that it has not paid the

---

[14] A federal district court sitting in diversity applies the substantive law of the forum state, including that state's choice of law rules. *In re Coudert Bros. LLP*, 673 F.3d 180, 186 (2d Cir. 2012) (citing *Klaxon Co. v. Stenton Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496–97 (1941)).

14

amount Plaintiff seeks. (Answer ¶ 1; Am. Compl. ¶ 17). Accordingly, Plaintiff has established its claim for breach of contract.

Although a complaint's allegations pertaining to liability are deemed admitted upon entry of default, allegations relating to damages are not. *See Greyhound Exhibit Grp.*, 973 F.2d at 158. Rather, damages generally must be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. *Id*. An evidentiary presentation is required so that the court may ensure that there is a basis for the damages sought before entering judgment in the amount demanded. *Fustok*, 873 F.2d at 40. A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* FED. R. CIV. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok*, 873 F.2d at 40.

An evidentiary hearing is necessary here because Plaintiff provides no audit documents or substantive analysis for the amount to which it claims to be entitled.[15] The Court is left to speculate as to the basis for Plaintiff's calculations and their accuracy. Further, Concord has an arguable defense to the amount of damages claimed. Concord would be entitled to defend against Plaintiff's breach of contract claim by relying on evidence that the estimated premium was equal to or greater than the premium calculated based on Concord's actual gross receipts for the Policy period. Therefore, Plaintiff's request for a default judgment should be granted, if at all, only to the extent of liability. Concord should be permitted to contest any damage award in an evidentiary hearing.

---

[15] Plaintiff merely provides an amount that it contends reflects the difference between the estimated premium Concord paid and premium calculated based on Concord's actual gross receipts for the Policy period. (Dkt. Nos. 17-3, 17-2). This is hardly sufficient to sustain Plaintiff's burden to prove damages on a motion for default judgment without an evidentiary hearing.

15

## CONCLUSION

For the reasons set forth above, I respectfully recommend that Your Honor deny Plaintiff's motion for default judgment and permit Concord leave to file its answer. In the alternative, I respectfully recommend that Your Honor grant Plaintiff's motion for default judgment but only as to liability and refer the matter to me for an inquest on damages.

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Rachel P. Kovner within fourteen days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED.

**/s/ Ramon E. Reyes, Jr.**

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: July 28, 2021
      Brooklyn, NY