UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 20-CV-2341 (RPK) (RER)

———————————

AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY

versus

CONCORD RESTORATION INC.

———————————

**REPORT & RECOMMENDATION**

March 24, 2023

———————————

TO THE HONORABLE RACHEL P. KOVNER,
UNITED STATES DISTRICT JUDGE

**RAMON E. REYES, JR., U.S.M.J.:**

American Empire Surplus Lines Insurance Company ("American Empire" or "Plaintiff") commenced this action against defendant Concord Restoration Inc. ("Concord" or "Defendant") pursuant to 28 U.S.C. §§ 1332, 2201, and 2202, alleging breach of a general commercial liability insurance policy (ECF No. 9 ("Am. Compl.") ¶ 3). Pending before the Court is Plaintiff's unopposed Motion for Summary Judgment (ECF No. 28 ("Mot. for Summary J.")), which Your Honor referred to me for a Report and Recommendation (Order dated 1/5/2023). After carefully reviewing the record, and for the reasons set forth herein, I respectfully recommend that Plaintiff's Motion for Summary Judgment be granted in part and denied in part, and that judgment be entered against Concord for $215,209.10, plus $41.46 per diem in interest until the date judgment is entered.

**BACKGROUND**

I. Factual Background

American Empire issued a general commercial liability insurance policy to Concord for the period June 6, 2018 to June 6, 2019 (the "Insurance Policy"). (ECF No. 28-11 ("Pl's 56.1") ¶ 1; ECF No. 28-8 ("Am. Ins. Policy")).[1] Under the Insurance Policy, Concord's insurance premium was calculated as a percentage of its gross receipts during the policy period. (Pl's 56.1 ¶ 2). The Insurance Policy contemplated a set premium based on an estimate of Concord's gross receipts, subject to adjustment if an audit by American Empire revealed that Concord's actual gross receipts exceeded the initial estimate. (*Id.* ¶ 3). The Insurance Policy provides, in relevant part, that the agreement is "subject to a minimum policy premium" that "shall apply unless the audit condition of this policy develops a greater premium." (Am. Ins. Policy at 44; *id.* ¶ 5). It further provides that Concord is "responsible for the payment of all premiums," and allows American Empire to "examine and audit [Concord's] books and records . . . as they relate to this policy at any time during the policy period and up to three years afterward." (Am. Ins. Policy at 1; *see also* Pl's 56.1 ¶¶ 6–7).

Based on American Empire's initial estimate of Concord's gross receipts, Concord paid an advance premium of $227,375. (Pl's 56.1 ¶ 13; Am. Ins. Policy at 4). Following the close of the policy period, American Empire retained Matson Driscoll & Damico LLC ("Matson Driscoll") to audit the financial records of Concord to determine its actual gross receipts during the policy

---

[1] The following facts are deemed admitted as they appear in Plaintiff's unopposed Local Civil Rule 56.1 Statement. E.D.N.Y. Local Civil Rule 56.1(c); *Trustees of the Local 7 Tile Indus. Welfare Fund v. Alp Stone, Inc.*, No. 12-CV-5974 (NGG) (RER), 2015 WL 4094615, at *1 n.1 (E.D.N.Y. June 17, 2015) (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.")).

2

period. (Pl's 56.1 ¶ 8). The audit report showed that Concord's actual gross receipts during the policy period were $1,739,535.14 (Pl's 56.1 ¶ 9; ECF No. 28-9 ("Audit Report") at 2).

Upon completion of the audit, Matson Driscoll exchanged emails regarding the findings of the audit with "Concord's representative" Nadira Mangal, and "Concord's brokers" Alex and Bernie Polansky. (Pl's 56.1 ¶ 11; *see also* Audit Report at 11–13). In response to Matson Driscoll's request that Concord advise if they were in agreement with the findings, on February 4, 2020, Alex Polansky stated, "My apologies I was told that Concord already confirmed this, Yes we are in agreement with your findings kindly proceed." (Pl's 56.1 ¶ 12; *see also* Audit Report at 11).

On or about February 5, 2020, American Empire prepared an audit endorsement reflecting the following computation:

> the amount of [Concord's] actual gross receipts ($1,739,535) are multiplied by the premium rate charged under the American Empire Policy ($227.375 per $1,000 of gross receipts.[] This resulted in an earned premium for the policy period of $395,527. From this figure was subtracted the amount of advance premium paid by Concord ($227,375 []), leaving an additional premium due of $168,152.00.

(Pl's 56.1 ¶ 13; *see also* ECF No. 28-10 ("Audit Endorsement") at 1). Thereafter, "despite due demand American Empire did not receive payment from Concord for the additional premium due." (Pl's 56.1 ¶ 13; *see also* ECF No. 28-2). American Empire subsequently retained counsel and continued efforts to obtain payment of the amount due. (*Id.*).[2]

---

[2] In its proposed Answer to the Amended Complaint (ECF No. 15), Affidavit in Opposition to Plaintiff's Motion for Default Judgment (ECF No. 16), and Sur-Reply (ECF No. 18), Defendant asserted that (i) its default was not willful, and (ii) Plaintiff's calculation of Concord's gross receipts was incorrect (*see, e.g.*, ECF No. 16. ¶¶ 4–6). Concord further asserted that Concord's broker "mishandled the audit and failed to properly analyze the gross receipts figures [American Empire was] using to calculate the insurance premiums" and agreed to American Empire's findings "[w]ithout any authorization or authority to do so." (ECF No. 18 ¶¶ 3–4). However, as Defendant has not set forth such assertions in opposition to Plaintiff's Motion for Summary Judgment, "[P]laintiff's recitation of the facts is assumed to be true." *Universal TV Distribution Holdings LLC v. Walton*, No. 03 Civ. 9133 (GBD), 2004 WL 2848528, at *2 (S.D.N.Y. Dec. 9, 2004).

II.  Procedural Background

On May 26, 2020, American Empire filed the Complaint, seeking judgment in the sum of $168,152 for the additional premium due and owing by Concord following the audit of Concord's gross receipts, plus interest and attorneys' fees, and a declaration that "American Empire has no obligation to defend and/or indemnify Concord [ ] relative to [ ] any occurrence, offense, claim or suit which has or may be reported to American Empire under the [Insurance] Policy." (Am. Compl. ¶¶ 18, 21).[3] After American Empire timely served the Summons and Amended Complaint on Concord (ECF No. 10), American Empire "consented to numerous extensions of time for Concord to provide documentation when they raised an unsupported issue that the audit was incorrect, but Concord never supplied any supporting documentation." (Pl's 56.1 ¶ 17).

The Clerk of Court entered a Certificate of Default (ECF No. 11), and on September 8, 2020, Plaintiff moved for default judgment based on Concord's failure to appear (ECF No. 12). On September 22–23, 2020, Concord finally appeared through counsel and filed a proposed Answer to the Amended Complaint. (ECF Nos. 14–15). On September 28, 2020, Defendant filed an affidavit in Opposition to Plaintiff's Motion for Default Judgment (ECF No. 16), and on October 5, 2020, Defendant filed a Sur-Reply in Opposition to Plaintiff's Motion (ECF No. 18).

On March 30, 2020, Your Honor adopted in part my Report and Recommendations (ECF No. 20), finding that although Concord's default was willful, "Concord has set out a meritorious defense, and American [Empire] has not established prejudice." (ECF No. 23). In light of these factors, and "against the backdrop of the judicial preference for resolving the cases on the merits rather than by default," Your Honor denied Plaintiff's Motion for Default Judgment. (*Id.*).

---

[3] On August 12, 2020, American Empire filed the Amended Complaint, which included only non-substantive changes and corrections to the original Complaint. (ECF No. 28-1 ¶ 6 n.1).

4

Accordingly, this case proceeded to discovery, with American Empire serving discovery demands on Concord's counsel, including a deposition notice, a request to produce documents, and interrogatories. (Pl's 56.1 ¶ 21). Throughout the discovery period, Concord did not supply any documentation nor appear for a deposition, despite American Empire's repeated attempts to coordinate with Concord's counsel (*id.* ¶¶ 21–25) and despite the Court's extension of discovery (Order dated 7/5/2022). American Empire then filed a motion, pursuant to Federal Rule of Civil Procedure 37, seeking to preclude Concord from offering evidence of any defenses to the claims in the Amended Complaint, based upon Concord's failure to provide discovery documents, information, and desposition testimony. (*Id.* ¶ 26). On October 5, 2022, the Court granted American Empire's motion for an order of preclusion, and ruled that discovery was closed. (*Id.* ¶ 26; Order dated 10/5/2022). On December 22, 2022, American Empire filed the instant unopposed Motion for Summary Judgment. (Mot. for Summary J.).

## **LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to material fact exists if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the court must "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in that party's favor." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011) (citing *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir.2010)). "The moving party bears the burden of showing the absence of a genuine dispute as to any material fact[.]" *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Once this burden is met, however, the burden shifts to the nonmoving party to put forward some evidence

establishing the existence of a question of fact that must be resolved at trial." *McFarlane v. Harry's Nurses Registry*, No. 17-CV-06350 (PKC) (PK), 2020 WL 1643781, at *4 (E.D.N.Y. Apr. 2, 2020) (citing *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009)).

Where, "the non-moving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (internal citation omitted). In those cases where a motion for summary judgment is unopposed, "[t]he court may conduct a review of the affidavits and other evidence submitted in support of the motion to decide whether the movants have met their threshold burden of production." *Hugee v. U.A.W. Loc. 259 Pension Fund*, No. 17-CV-02491 (MKB) (RER), 2019 WL 1517104, at *3 (E.D.N.Y. Feb. 15, 2019), *adopted by* 2019 WL 1253197 (Mar. 19, 2019) (citing *Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Eng'rs Local 14-14B, AFL-CIO v. Centr. Enters., Inc.*, No. 11-CV-973 (FB) (RML), 2012 WL 4891564, at *4 (E.D.N.Y. Oct. 15, 2012)). There, "[a]lthough the failure to respond may allow the district court to accept the movant's factual assertions as true, *see* Local Civ. R. 56.2, the moving party must still establish that the undisputed facts entitle him to 'a judgment as a matter of law.'" *Vermont Teddy Bear Co.*, 373 F.3d at 246 (citing *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) (per curiam)). In deciding an unopposed motion for summary, the Court "must be satisfied that the citation to evidence in the record supports the [factual] assertion[s]." *Id.* at 244.

## DISCUSSION

Plaintiff argues that summary judgment should be granted as there is no issue of fact as to the additional premium owed by Defendant. (Mot. for Summary J. at 8). In addition to the

outstanding premium, Plaintiff seeks a declaration that Plaintiff has no duty to cover Defendant under the Insurance Policy in the event Defendant fails to satisfy the judgment. (*Id.* at 15). Finally, Plaintiff seeks relief of interest on the outstanding premium, as well as attorneys' fees and expenses. (*Id.* at 13–15). The Court agrees that Plaintiff is entitled to the additional premium and appropriate interest, but disagrees that Plaintiff is entitled to declaratory judgment and attorneys' fees.

I. <u>Defendant Breached the Insurance Policy and Owes the Unpaid Premium</u>

"Actions for unpaid insurance premiums are analyzed as breach of contract claims." *Am. Empire Surplus Lines Ins. Co. v. B&B Iron Works Corp.*, No. 18-CV-6384 (WFK) (ST), 2021 WL 4439760, at *1 (E.D.N.Y. Sept. 28, 2021). To support a claim for breach of contract under New York law,[4] the plaintiff must establish: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996); *see also Skyline Restoration, Inc. v. Great Am. Restoration Servs. Inc.*, 18-CV-5634 (JS) (SIL), 2019 WL 5150207, at *3 (E.D.N.Y. Aug. 5, 2019).

Here, Plaintiff has established a prima facie case of unpaid insurance premiums. As an initial matter, Plaintiff has submitted the Insurance Policy describing the premium calculations, to which both parties agreed. The Insurance Policy states that the "Named Insured shown in the Declarations . . . is responsible for the payment of all premiums[.]" (Am. Ins. Policy at 1). The Declarations state that the Concord is the "Named Insured." (*Id.* at 4). Under the Insurance Policy, Plaintiff agreed to provide coverage during the years the Policy was in effect, up to the general

---

[4] A federal district court sitting in diversity applies the substantive law of the forum state, including that state's choice of law rules. *In re Coudert Bros. LLP*, 673 F.3d 180, 186 (2d Cir. 2012) (citing *Klaxon Co. v. Stenton Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496–97 (1941)).

aggregate limits of the policy (*id.*), and in return Defendant agreed to pay the advance premium and any additional audit premium (*id.* at 18). Furthermore, there is no indication in the record that Plaintiff failed to adequately perform under the Insurance Policy.

With respect to Defendant's breach and the amount owed, Plaintiff has provided documentation detailing that Defendant owes and has not paid an additional premium of $168,152. Although Defendant has not submitted a Rule 56.1 Statement formally opposing Plaintiff's theory, "the court opted to undertake a careful review of the audit statements, audit endorsements, and affidavits provided, in order to ensure there is sufficient supportive documentation for the premium amount claimed." *Am. Empire Surplus Lines Ins. Co. v. DMTB AMG Inc.*, No. 20-CV-3929 (NGG) (RER), 2023 WL 1819318, at *4 (E.D.N.Y. Feb. 8, 2023). In connection with the Motion for Summary Judgment, Plaintiff has submitted both an audit report and audit endorsement, prepared by Matson Driscoll and American Empire respectively, which set forth the amount of Concord's gross receipts and the computation of the additional premium Concord owed. (*See generally* Audit Report, Audit Endorsement). Matson Driscoll's Audit Report is based on (i) Concord's sales during the relevant period; (ii) Concord's monthly bank statements during the relevant period; (iii) Concord's payments to sub-contractors; and (iv) Concord's income tax return. (Audit Report at 3–6, 7, 8–9, 10). Summaries of the aforementioned sources are attached to the Audit Report. (*Id.*) American Empire's Audit Endorsement clearly and succinctly sets forth the additional premium of $168,152 due based on Defendant's gross receipts during the relevant period. (*See* Audit Endorsement at 1). In addition, Plaintiff submitted affidavits of (i) Maureen O'Connor, Plaintiff's counsel (ECF No. 28-1), and (ii) Randy Myers, Vice President of Great American Risk Solutions, a division of Great American Insurance Company, American Empire's parent company (ECF No.

8

28-7), both of which describe additional context for and support the elements of Plaintiff's prima facie case.

Together, these materials provide sufficient support for Plaintiff's conclusion that the additional $168,152 premium is owed and unpaid. As Defendant has not responded to Plaintiff's Motion for Summary Judgment, Defendant has failed to raise any material factual disputes that rebut Plaintiff's prima facie case. Accordingly, the Court is satisfied that there is no material factual dispute as to whether Defendant owes Plaintiff unpaid premiums pursuant to the Insurance Policy. Therefore, I respectfully recommend that Plaintiff's Motion for Summary Judgment with respect to the unpaid additional insurance premium be granted.

II.   <u>Declaratory Judgment is Not Warranted in Light of the Speculative Nature of Future Actions</u>

Plaintiff also seeks a declaration that "American Empire has no obligation to defend and/or indemnify Concord, or any other person or entity seeking coverage under the [Insurance] Policy, relative to the any [sic] occurrence, offense, claim or suit which has or may be reported to American Empire under the [Insurance] Policy." (Am. Compl. ¶ 21).

The Declaratory Judgment Act provides that:

> In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

28 U.S.C. §§ 2201, 2202.

The requirement of an "actual controversy" means that the controversy must be:

> one that is appropriate for judicial determination . . . . [It] must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

9

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240–41 (1937). A controversy "may not be 'hypothetical or abstract' in nature, but rather must be 'a real and substantial controversy. . . .'" *FSP, Inc. v. Societe Generale*, No. 02 Civ. 4786, 2003 WL 124515, at *4–5 (S.D.N.Y. Jan. 14, 2003), *aff'd and remanded by* 350 F.3d 27 (2d Cir. 2003), and *adhered to on reconsideration*, 2005 WL 475986 (Feb. 28, 2005).

"The Second Circuit has recognized that litigation over insurance coverage 'has become the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real.'" *Am. Empire Surplus Lines Ins. Co. v. Barca Restoration Corp.*, No. 18-CV-07033 (RJD) (PK), 2020 WL 1853227, at *4 (E.D.N.Y. Mar. 4, 2020) (citing *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992) (internal quotation marks omitted)). Jurisdiction is not necessarily defeated merely because liability is contingent. *Id.* "Rather, courts should focus on 'the *practical likelihood* that the contingencies will occur.'" *Id.* (emphasis added). Application of the "practical [ ] likelihood standard" in insurance disputes accounts for both the insurer's duty to defend and the insurer's duty to indemnify. *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 93 (2d Cir. 2023). "With respect to the duty to defend, the district court must find a practical likelihood that a third party will commence litigation against the insured. With respect to the duty to indemnify, the court must find a practical likelihood that the third party will prevail in such litigation." *Id.*

Here, Plaintiff has not shown a practical likelihood that it will be called upon to defend or indemnify Defendant under the Policy in the future. For example, American Empire has not alleged that any third party has or will commence litigation against Concord, or that some hypothetical third party would prevail in a litigation. American Empire has not otherwise alleged that any claim has been made under the Insurance Policy, or that any incident has occurred that

10

would trigger its duty to defend and indemnify. Accordinginly, without such a showing, Plaintiff's expectation of future liability is "speculative, and does not give rise to an actual controversy." *FSP, Inc.*, 2003 WL 124515, at *5; *see also Barca Restoration Corp.*, 2020 WL 1853227, at *4 (finding plaintiff insurance company did not show practical likelihood where plaintiff did not allege existence of liability imposed, claim made under the policy, pending action, or other incident).

III.   Additional Relief Sought

   A.  Interest

Plaintiff seeks interest on the unpaid premium. (Mot. for Summary J. at 13–14.) Prejudgment interest is recoverable under New York law "upon a sum awarded because of a breach of performance of a contract." N.Y. C.P.L.R. § 5001(a). Prejudgment interest is awarded in New York at a rate of nine percent per annum. N.Y. C.P.L.R. § 5004. Interest is computed from the "earliest ascertainable date the cause of action existed." N.Y. C.P.L.R. § 5001(b). A cause of action accrues upon breach of the contract. *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007).

American Empire has not provided a specific date on which the Policy was breached. "Courts in this District, however, have relied upon the date that an outstanding premium was demanded." *See Barca Restoration Corp.*, 2020 WL 1853227, at *5 (citing *Am. Empire Surplus Lines Ins. Co. v. EM & EM Chimney & Masonry Repair, Inc.*, No. 16-CV-1541 (ADS) (AYS), 2017 WL 4118390, at *4 (E.D.N.Y. Aug. 30, 2017)). Here, counsel for American Empire sent a demand letter to Concord on February 13, 2020. (ECF No. 28-2).[5] Therefore, the Court respectfully recommends that Plaintiff be awarded prejudgment interest on $168,152 (the amount of unpaid

---

[5] Plaintiff asserts that interest should instead be awarded from February 5, 2020, the date of the Audit Endorsement, and "the date [the Audit Endorsement] was sent to Concord, advising them of the $168,152 owed to American Empire." (Mot. for Summary J. at 13–14). Plaintiff, however, has not produced documentary support evidencing that Defendant received the Audit Endorsement on February 5, 2020. Thus, the Court recommends that February 13, 2020 be treated as the operative demand date.

11

insurance premium), at the rate of nine percent per annum beginning on February 13, 2020, for a total of $47,057.10, plus $41.46 per diem until judgment is entered.[6]

B. <u>Attorneys' Fees and Expenses</u>

Finally, Plaintiff seeks attorneys' fees and expenses in the sum of $23,710.44. (Mot. for Summary J. at 13–15). The Court notes that the Insurance Policy does not expressly provide for an award of attorneys' fees and expenses if Plaintiff prevails in litigation. "In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). "Under the general rule, attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule." *Hooper Associates, Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491 (1989). However, Plaintiff asserts that an exception to the general rule applies, specifically given that Defendant allegedly acted in bad faith throughout the litigation. (*See* Mot. for Summary J. at 14–15); *see also B&B Iron Works Corp.*, No. 18-CV-6384 (WFK) (ST), 2021 WL 4439760, at *5 (noting that court's have "inherent power" to assess attorneys' fees when the party has acted in bad faith) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). Plaintiff asserts that "[n]one of Concord's claimed defenses were valid, but by the assertion of them and refusal to acknowledge the amount due, American Empire was forced to expand the scope of this litigation and incur additional expense, by having to engage in discovery and extended litigation." (Mot. for Summary J. at 14–15). However, absent supporting evidence that Defendant's assertion of defenses and failure to acknowledge the amount due was an act of bad faith, these actions do not convince the the Court that an award of attorneys' fees to American Empire is warranted. *See Colombrito v. Kelly*, 764

---

[6] Calculated as of March 24, 2023. $168,152 \times (0.09 / 365) = \$41.46$ per diem. $\$41.46 \times 1{,}135$ days $= \$47{,}057.10$.

12

F.2d 122, 133 (2d Cir. 1985) ("The bad faith exception permits an award upon a showing that the claim is 'entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons.'") (quoting *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir. 1977)). For this reason, Plaintiff's request for attorneys' fees should be denied.

In any event, Plaintiff's failure to produce contemporaneous time records of the attorneys' fees also warrants denial of Plaintiff's request. The traditional rule in the Second Circuit is that a fee application must be supported by "contemporaneous time records" that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). "Failure to do so results in denial of the motion for fees." *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992); *see also Scott v. City of New York*, 626 F.3d 130, 133–34 (2d Cir. 2010). District courts have broad discretion in determining the reasonableness of an attorney's requested fees. *See Firststorm Partners 2, LLC v. Vassel*, No. 10-CV-2356 (KAM) (RER), 2012 WL 3536979, at *2 (E.D.N.Y. Aug. 15, 2012). Plaintiff has not attached any records detailing the time spent on this litigation or counsel's hourly rate. I therefore respectfully recommend denying Plaintiff's request for attorneys' fees.

## **CONCLUSION**

For the reasons set forth above, I respectfully recommend that Plaintiff's Motion for Summary Judgment be granted in part and denied in part, and that judgment be entered against Concord for $215,209.10, plus $41.46 per diem in interest until the date judgment is entered.

Plaintiff's counsel is hereby directed to serve copies of this Report and Recommendation upon Defendant by regular and certified mail and to file proof of service with the Clerk of the Court.

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Rachel P. Kovner within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED.

**/s/ Ramon E. Reyes, Jr.**

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: March 24, 2023
Brooklyn, NY